IN THE UNITED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Alexandra McGreal | ) | |
| And | ) | |
| Eric Robinson, | ) | |
| individually | ) | |
| and on behalf of all persons | ) | |
| similarly situated | ) CASE NO 24 CV 7346 | |
| as class representatives under | ) | |
| Illinois Minimum Wage Law and/or | ) | |
| Illinois Wage Payment and Collective Act | ) | |
| And as Representatives of the Collective | ) | |
| as permitted | ) | |
| under the Fair Labor Standards Act; | ) | |
| | ) **Honorable** | |
| | ) **Honorable** | |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| 630 Cleaning Services, LLC | ) | |
| D/B/A | ) | |
| Two Maids & A Mop Naperville | ) | |
| And | ) | |
| Daniel Brosseau | ) | |
| as an individual | ) | |
| under the FLSA and Illinois Wage Laws | ) | |
| | ) **JURY TRIAL DEMANDED** | |
| | ) **ON ALL COUNTS** | |
| Defendants. | ) | |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

NOW COME the Plaintiffs, Alexandra McGreal and Eric Robinson, individually and on behalf

of all others similarly situated, as class representatives, by and through their undersigned counsel

of record, upon personal knowledge as to those allegations in which they so possesses and upon

information and belief as to all other matters, pursuant to §216(b) of the Fair Labor Standards

Act (hereinafter "FLSA"), the Illinois Minimum Wage Law 820 ILCS 105/1 *et seq* (hereinafter

1

"IMWL" ) and the Illinois Wage Payment and Collection Act (IWPCA), and the Paid Leave for All Workers Act (Paid Leave Act) and seeking to void the Defendants Non-Compete Contract and brings these causes of action against Defendants 630 Cleaning Services, LLC D/B/A Two Maids & A Mop Naperville (hereinafter referred to as "2 Maids") and against Individual Defendant Daniel Brosseau and in so doing states the following:

## NATURE OF THE ACTION

1. Plaintiffs, Alexandra McGreal and Eric Robinson allege individually and on behalf of themselves, (Hereinafter references to "Plaintiffs" are inclusive of both Individual Plaintiffs) that they, under both federal and state wage laws, are entitled to be paid for all hours worked and to receive minimum wage and overtime wages for all hours worked and/or receive time and half for all hours worked over forty (40) hours per week and for paid leave and payment of paid leave.

2. Plaintiffs also bring individual collective and class claims that Defendants current policy, procedure and practice of paying wages is incorrect and fails to pay employees overtime wages at an overtime rate.

   a. Defendants policy is to pay overtime hours at straight time rates in violation of FLSA and IMWL to themselves and to the IMWL class and the FLSA collective.

3. Plaintiffs also bring claims that Defendants fail to pay all worked hours, including overtime hours for themselves and for the IMWL class and the FLSA collective based on Defendants policies requiring off-the-clock work time including but not

limited to Defendants failing to paying employees for travel time from the Defendants' office to the first job, and between jobs and for workers return trip to the Defendants' office at the end of the day as well as for Defendants' shaving of work hours from employees time records.

4. Plaintiffs also bring claims for Defendants failure to repay or failure to fully reimburse business expenses; primarily mileage in that Defendants pay for some costs of employees car operations, but not all the mileage expenses of those using their own cars for Defendants work.

5. Plaintiffs also bring claims for Defendants failure to include non-discretionary bonuses in the overtime rate of pay of the Plaintiffs, collective and class.

6. Plaintiffs also bring claims for failure to pay minimum wages for themselves, the FLSA collective and IMWL class, due to the Defendants' payment method of paying based on commission, but not ensuring said commissions are sufficient to pay for the Illinois Minimum wage and/or overtime pay.

7. Plaintiffs also bring claims for failure to pay minimum wages due to the Defendants' theft of tips as Defendants retain tips intended for payment to the Plaintiffs and an IWPCA tip theft class.

8. Plaintiffs' also bring claims pursuant to the IWPCA based on the Defendants' policy of not allowing, not properly paying or failing to payout earned vacation time, in violation of the IWPCA provisions requiring payment of earned wages via vacation time.

9. Plaintiffs' also bring claims pursuant to the IWPCA based on the Defendants' policy of not allowing, not properly paying or failing to payout earned vacation time, in

violation of the IWPCA provisions requiring payment of earned wages via vacation time.

10. Plaintiffs' also bring claims pursuant to the Paid Leave Act based on the Defendants' policy of not allowing, not properly paying or failing to payout earned vacation time, in violation of the Paid Leave Act provisions requiring payment of earned wages via vacation time.

11. Upon information and belief, Plaintiffs also bring claims based on Defendants policy of forced changes in rates of pay; specifically Defendants change employees rates of pay, especially in the final paychecks of employees who have resigned or are fired. They force, by threats to withhold wages, employees to "agree" or consent to changes in rates of pay in violation of the provisions of the IWPCA which forbid such unconsent changes in rates of pay.

12. Upon information and belief, Plaintiffs also allege that they were not paid for all hours worked and related claims brought pursuant to the IMWL, FLSA and IWPCA.

13. Further Plaintiffs and Class are to be paid via IWPCA's statutory requirement to pay all hours worked.

14. This action is brought as a class action pursuant to the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL") and Illinois Wage Payment and Collection Act (IWPCA) and Paid Leave Act.

15.     This action is also brought as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, 207 and 216(b) to recover unpaid wages for overtime pay and/or minimum wage pay due to the above described policy and procedures of the Defendants for three years prior to this filed complaint.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 and 1337 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C 1332 and 1367.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 based on 29 U.S.C. 216(b) known as the Fair Labor Standards Act.

17.     This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C 1332 and 1367 and Plaintiff seeks application of the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL") Paid Leave Act and the IWPCA.

18.     The Court is authorized to issue a declaratory judgment.

19.     Venue is proper in this Court.

20.     Defendant does business and is a resident of this District and Division of Federal Court.

## FACTS REGARDING THE PLAINTIFFS

21.     Plaintiff, Alexandra McGreal is a resident of the State of Illinois and a former employee of the Defendant Two Maids.

22.     Plaintiff, Eric Robinson is a resident of the State of Illinois and a former employee of the Defendant Two Maids.

## **DEFENDANT CORPORATE FACTS**

23.     630 Cleaning Services, LLC D/B/A Two Maids & A Mop Naperville (hereinafter referred to as "2 Maids") is a corporation or businesses which do business in Illinois and that Defendants provide services and products to customers from other states thus engages in the stream of commerce and operates a residential and commercial cleaning service with its office being located in Naperville Illinois.

## **JURISDICTION IS ESTABLISHED VIA ENGAGEMENT IN COMMERCE BY DEFENDANTS**

## **DEFENDANTS ARE ENTERPRISES THAT REGULARLY AND RECURRENTLY HAVE AT LEAST TWO EMPLOYEES ENGAGED IN COMMERCE**

## **AND/OR INDIVIDUAL FLSA JURISDICTION**

24.     Defendants are enterprises that regularly and recurrently have at least two employees engaged in commerce.

25.     Each of the Defendants, all Defendants, are enterprises that regularly and recurrently have at least two employees engaged in commerce, this engagement in commerce includes but is not limited to the use of credit cards and/or bank transfers that cross state lines in the stream of commerce.

26.     Defendant 2 Maids engaged in commerce by accepting credit card payments, Zelle payments or other online payments from other states and/or check payments that were processed via the banking system.

27.    Further Plaintiffs and Class engaged in commerce via processing of sales to ultimate customers via use of those customers' credit cards which occur multiple times a day, thus via the use of credit cards, and transmittal of those transactions from state to state, the Plaintiffs and class engaged in commerce, these credit card transactions were/are for travel in state and out of state.

28.    "*all* of the employer's employees are covered under [FLSA] as long as at least *some* handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce." **Jones v. E. Brooklyn Security Services Corp.,** No. 11-CV-1021, 2012 WL 3235784, at *4 (E.D.N.Y. Aug. 7, 2012) (quoting 29 U.S.C. § 203(s)(1)(A)).

29.    Courts have found this element satisfied where employees "merely handled supplies or equipment that originated out-of-state." **Rodriguez v. Almighty Cleaning, Inc**., 784 F.Supp.2d 114, 354*354

30.    Here Plaintiffs used computers, cleaning equipment, brooms, bags, and cleaning supplies that moved in interstate commerce.

31.    Further individual FLSA jurisdiction is established by Plaintiffs and class as customers were given gifts by the Defendants, but those gifts were delivered by the Plaintiffs and class, these gifts include each clean: squeegees, microfiber cloths, cozies, corkscrews, luggage tags, pens, scrapers, bottle openers, teddy bears, pizza cutters, chip clips, magnets, coasters, rulers, and jar openers.

32.    The above named gifts traveled in commerce, and thereby provide jurisdiction for the FLSA claims.

## STATEMENT OF FACTS

**A.**     **DEFENDANTS policies and procedures and Compensation Practices fail to pay overtime wages for overtime work hours and/or pay proper overtime rate of pay and/or Minimum Wage of the Plaintiffs, Class and Collective**

33.     Plaintiffs were employed by DEFENDANTS as hourly employees and they worked beyond forty hours, but Defendants failed to pay overtime at the proper and correct rate of pay; rather Defendants paid overtime hours at a straight time rate of pay.

34.     Plaintiffs worked as an hourly, non-exempt employees for Defendants.

35.     Plaintiff Alexa McGreal and Eric Robinson were paid straight time for all hours worked both for overtime hours and straight hours.

### INDIVIDUAL DEFENDANT ALLEGATIONS

36.     Individual Defendant Daniel Brosseau is named as a Defendant pursuant to the FLSA, IWML and IWPCA.

37.  Defendant Daniel Brosseau manages and controls the operation of the Defendant 2 Maids and dictates the employment policies of the Defendant including but not limited to the decision to not pay overtime wages, not pay for overtime travel time and to steal tips of the low wage workers.

38.     As owner and manager of the Corporate Defendant Daniel Brosseau had the power to hire, fire and discipline employees and used that power to handle (or approve) nearly 100% of the hiring, firing and disciplines of employees.

39.     As owner and manager of the Corporate Defendant Daniel Brosseau caused the wage violations either directly by not paying overtime and/or all worked hours and/or theft of employee tips.

40. Defendant Brosseau owns and operates the corporate Defendant.

41. Defendant Brosseau had/has day to day control of operations of the Corporate Defendant and Plaintiffs' work.

42. Defendant Brosseau also handled the payment (and shortage) of wages to the employees via handling or overseeing the payroll and implementation of the denial of tips policy and/or travel payment policy and/or no overtime wage payment policy.

43. Defendant Brosseau was aware that each time Plaintiffs and the class worked over 40 hours, that Plaintiffs and Class were not paid overtime.

**CLASS AND COLLECTIVE ACTION ALLEGATIONS**

**A.      Class Allegations under IMWL**

44. Plaintiffs bring state wage law claims, pursuant to the Illinois Minimum Wage Law (IMWL) 820 ILCS 105, as individual and class action.  The IMWL Class is defined as all current, former and future employees of the Corporate Defendant paid an hourly wage less than minimum wage and/or not paid overtime wages for overtime hours and/or not paid the proper rate of overtime pay for all hours over forty per week.

45. Plaintiff's IMWL Class includes claims for all owed wages due for three (3) years prior to the filling of this complaint and until a judgment is entered in this case (the "Class" and "Class Period," respectively) (hereinafter, "Plaintiff" or "Plaintiffs" refers to both Named Plaintiff and the IMWL Class).

46. Excluded from the Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the

Class period has had, a controlling interest in Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper request for exclusion from the Class and/or all properly salaried employees of Defendants.

47. **Numerosity:** The persons in the Class identified above are geographically diverse and so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants. Upon information and belief, there are hundreds of members of the Class based upon the fact that during the Class Period the Defendants employed from 35 employees. The numerosity is also demonstrated by the DEFENDANTS having a work force of 10-15 employees at any one time and due to the high "turnover" of these positions the number of potential class members is increased substantially. It is estimated that there are at least 50 persons in the IMWL Class.

48. **Commonality**: There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members. The questions of law and fact common to this Class that predominate over any question solely affecting individual members of the Class, including but are not limited to:

    a.   whether the Defendants employed Plaintiffs and the Class within the meaning of the IMWL.

    b.   what proof of hours worked is sufficient where employers fail in their duty to maintain time records

    c.  whether the Plaintiffs and the Class were paid overtime wages pursuant to the overtime provisions of the IMWL

    d.  whether Defendants engaged in a continuing policy, pattern or practice of failing to pay all overtime wages at the proper rate of pay which includes all compensation;

    e.  whether Defendants paid for all work time, including all compensable time for travel time.

49.    **Typicality**:   The claims of Representative Plaintiffs are typical of the IMWL Class.

50.    **Adequacy:** Representative Plaintiffs will fairly and adequately represent the interests of the IMWL Class.

51.    **Superiority:**  A class action is superior to other available methods for their fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation, where individual Plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in Court against corporate Defendants like Defendants.

52.    The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

53.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of this litigation where no individual employee can justify the commitment of the large financial

resources to vigorously prosecute a lawsuit in Federal Court against the corporate Defendants.

54. The Defendants has acted or has refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

55. IMWL violation claims are brought and maintained as a class for all IMWL claims asserted by the Plaintiffs.

56. The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

57. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of this litigation where no individual employee can justify the commitment of the large financial resources to vigorously prosecute a lawsuit in against the corporate Defendants.

58. The Defendants have acted or has refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

**B.**     **Class Allegations under the IWPCA**

59. Plaintiffs bring state wage law claims, pursuant to the Illinois Wage Payment and Collection Act (IWPCA), as individuals and class action. The IWPCA Class is defined as all current, former and future employees of the Corporate Defendant to whom Defendant violated the IWPCA:

    a.   By retaining tips of employees.

b. By failing to pay earned vacation time.

c. By changing the agreed rate of pay without agreement or consent of the employee and/or forcing the agreement by threat of withholding wages from employees.

60. Plaintiffs' IWPCA Class includes claims for all owed wages due for five (5) years for oral agreements and ten (10) years for written agreements prior to the filling of this complaint and until a judgment is entered in this case (the "Class" and "Class Period," respectively) (hereinafter, "Plaintiff" or "Plaintiffs" refers to both Named Plaintiffs and the IWPCA Class).

61. Excluded from the Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class period has had, a controlling interest in Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper request for exclusion from the Class.

62. **<u>Numerosity:</u>** The persons in the Class identified above are geographically diverse and so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants. Upon information and belief, there are hundreds of members of the Class based upon the fact that during the ten year Class Period the Defendants employed from 35 employees. The numerosity is also demonstrated by the DEFENDANTS having a work force of 4-5 employees at any one time and due to the high "turnover" of these positions the number of potential class

members is increased substantially. It is estimated that there are at least 35 persons in the IWPCA Class.

63.     **Commonality**: There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members.  The questions of law and fact common to this Class that predominate over any question solely affecting individual members of the Class, including but are not limited to:

   a.  whether the Defendants employed Plaintiff and the Class within the meaning of the IWPCA.

   b.  what proof of hours worked is sufficient where employers fail in their duty to maintain time records

   c.  whether the Plaintiff and the Class were paid:

      i.   For all hours worked, and if Defendants secretly Shaved hours from the Classes wages.

      ii.  Theft of tips of employees.

      iii. Earned vacation time.

      iv.  Via IWPCA's statutory requirement to pay all hours worked.

      v.   Forced changes in rates of pay

      vi.  Wage deductions for "recleans".

64.     **Typicality**:   The claims of Representative Plaintiffs are typical of the IWPCA Class.

65.     **Adequacy:** Representative Plaintiffs will fairly and adequately represent the interests of the IWPCA Class.

66. **Superiority:** A class action is superior to other available methods for their fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation, where individual Plaintiff lack the financial resources to vigorously prosecute separate lawsuits in Court against corporate Defendants like Defendants.

67. The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

68. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of this litigation where no individual employee can justify the commitment of the large financial resources to vigorously prosecute a lawsuit in Federal Court against the corporate Defendant.

69. The Defendants have acted or has refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

70. IWPCA violation claims are brought and maintained as a class for all IWPCA claims asserted by the Plaintiffs.

71. The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

72. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of this litigation

where no individual employee can justify the commitment of the large financial resources to vigorously prosecute a lawsuit in against the corporate Defendant.

73. The Defendants have acted or has refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

**C. The FLSA Collective Action**

74. Plaintiffs bring claims for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA (29 U.S.C. § 216(b)), on behalf of all employees of DEFENDANTS who were, are, or will be employed by DEFENDANTS during the period of three (3) years prior to the date of commencement of this action through the date of judgment in this action, who were not compensated at one-and-one-half times the regular rate of pay for all work performed in excess of forty (40) hours per work, thereby denying the FLSA Collective owed overtime wages and/or minimum wages and/or payment of the proper overtime rate.

75. FLSA violation claims are brought and maintained as an "opt-in" collective action pursuant to § 16(b) of FLSA, 29 U.S.C. § 216(b), for all FLSA claims asserted by the Plaintiff, since the FLSA claims of the Plaintiffs are similar to the FLSA claims of all hourly employees employed by Defendants.

76. Defendants are liable for improperly compensating Plaintiffs and FLSA Collective under the FLSA, and as such notice should be sent to the FLSA Collective. There are numerous similarly situated current and former employees

of DEFENDANTS who have been denied proper payment of the overtime wages. These current, former and future employees would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. The similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

77. The Defendants' unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting all Defendants' employees.

78. Defendants' consented, were knowledgeable of that they were paying the overtime rate of pay incorrectly.

79. Plaintiffs were paid at an hourly pay rate and is classified as "non-exempt" employees by Defendants.

80. This is a FLSA violation because the Plaintiffs works beyond forty (40) hours, thus Plaintiffs are owed time-and-half of the regular pay for ALL hours beyond 40.

81. Further this also a violation of the Plaintiffs' rights under Illinois Minimum Wage law and Illinois over-time wage law and IWPCA.

82. The FLSA defines the "regular rate" as all remuneration for employment paid to or on behalf of the employee, before any deductions from wages are made. (See 29 U.S.C. §207(e); 29 C.F.R. §778.109.)

**DEFENDANTS' Actions were Willful, Knowledgeable and/or Had Reckless Disregard for FSLA Regulations**

83. DEFENDANTS required and permitted Plaintiffs to work more than 40 hours in a week and/or paid under minimum wages.

84. DEFENDANTS unlawful conduct has been uniform, widespread, repeated and consistent.

85. Defendants' willful violations are especially demonstrated by their knowledge that its employees were not paid the correct rate of pay.

86. All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law and permitted under Federal Law, Illinois Law and other state laws.

87. All allegations plead herein are plead with personal knowledge as to those allegations to which Plaintiffs have such knowledge and based upon "information and belief" as to all other allegations.

## SPECIFIC VIOLATIONS

88. Plaintiffs also plead specific overtime violations as some District Judges require a specific pleading for jurisdiction reasons, these specific plead claims are NOT the only claims Plaintiffs have, rather these are provided to ensure the jurisdiction pleading requirement is met.

89. For Plaintiff Alexandra McGreal Plaintiff alleges that in the work weeks of 2/4/24 to 2/17/24 Plaintiff worked for Defendant 92 hours and 10 minutes.

90. Thus for these two weeks Plaintiff worked 12 hours and 10 minutes of overtime.

91. Yet Defendant paid Plaintiff 80 hours at $20.00 per hour, and paid a "salary" of $20.00 per hour times 12 hours and 10/100th, thus shorted Plaintiff for 12.10 of half time wages or $120.10 in owed overtime wages for this one example FLSA violation.

92. Likewise Plaintiff Eric Robinson pleads a specific violation of the FLSA.

93.   For the two week period of 10/15/23 to 10/28/23 Plaintiff Robinson was paid 78.25 hours, but he was not paid for any travel time.

94.   Plaintiff Robinson alleges he traveled at least five (5) hours of travel time in these two weeks and Plaintiff was not paid for any of these five hours of travel time.

95.   Plaintiff Robinson thus worked, with the inclusion of the five hours of travel time, a total of 83.25 hours or three hours and 25/100, yet his 3.25 hours of overtime was completely unpaid.

96.   Plaintiff Robinson alleges he is owed 3.25 hours of overtime at an overtime rate of $25.50 per hour or $82.88 in unpaid overtime wages.

97.   This estimated owed overtime does not include any increases for bonuses, which for this paycheck was $120.00.

98.   Additionally in these same two weeks Plaintiff also worked a number of cleaning assignments, thus Plaintiff traveled from the office to the customer's location and back to the office. This travel time is further evidenced by Defendant paying mileage in the amount of $46.35.

**COMMISSION PAY**

99.   It appears that Defendants are paying its employees by a convoluted system of commissions.

100.  Defendant pays its cleaning employees a rate of pay based on customers evaluation rating system.

101.  The commission paid is a percentage of the cleaning fee, based on the customer rating.

102.  If the customer rating is low, the cleaners are paid only 10% of the cleaning fee.

103. Thus if a cleaning job is only $100.00 and there is a low rating, that would result in the cleaner being paid just $10.00, which if over a 2 hour period is less than $7.25 per hour.

104. Further, Defendants commission pay method does NOT pay Plaintiffs, class and collective overtime rate for overtime hours and does not pay for all worked time.

## TRAVEL TIME IS COMPENSABLE TIME

## AND IS NOT PAID BY DEFENDANTS

105. Further, Defendants fail to pay for the travel time from the office to the job, and back, and never pays for travel between jobs. This policy is in violation of the FLSA and IMWL which require payment of non-commute travel time.

106. Pursuit to the FLSA time spent traveling between worksites during a workday is compensable under 29 C.F.R. 785.38

107. The travel time should be paid at the employee's regular rate of pay; however, it is permissible to have a wage agreement whereby employees are paid at a lower rate (at least minimum wage) for compensable travel time and other types of non-productive work time, as noted in 29 C.F.R. 778.318(b) and a DOL administrative opinion letter dated January 22, 1999 (BNA, WHM 99:8211). However, any such agreement should be clearly expressed in a written wage agreement signed by the employee, and the time so distinguished must be carefully and exactly recorded.

108. Here there was no such agreement in writing, thus Plaintiff and collective are owed wages at their regular rate and/or overtime rate of their regular rate.

109. While travel to and from the Plaintiff's home may not compensable under the FLSA, it is compensable under the IMWL.

110.     The IMWL regulations include Section 210.110 which reads**:**

An employee's travel, performed for the employer's benefit (for example, in response to an emergency call back to work outside the employee's normal work hours, or at the employer's special request to perform a particular and unusual assignment, or as a part of the employee's primary duty, or in substitution of the employee's ordinary duties during normal hours) is compensable work time as defined in 29 CFR 785.33 – 785.41 (1994, no subsequent dates or editions), as amended at 26 FR 190.

111.     Thus when Congress amended the FLSA with the Employee Commuter Flexibility Act of 1996, IDOL defined compensable travel time as it was defined under the FLSA in 1995 and not thereafter. 56 Ill. Admin. Code 210.110.

112.     In Illinois, employees driving company cars from home to a job site are on the clock under the IMWL even though they  may not be under the FLSA, here Plaintiff  makes this claim for his work time while driving the company vehicle.

113.     Additionally on-call or emergency call outs are also compensable for travel time.

114.     An employee's travel, performed for the employer's benefit (for example, in response to an emergency call back to work outside his/her normal work hours, or at the employer's special request to perform a particular and unusual assignment, or as a part of the employee's primary duty, or in substitution of his/her ordinary duties during normal hours) is compensable work time as defined in 29 CFR 785.33 – 785.41.

**FAILURE TO RE-IMBURSE CAR EXPENSES**

115.    Defendants fail to repay car expenses.

116.    Defendants require its employees to use their cars in their work, driving from the office to the customers, and between customers.

117.    Yet Defendants fail to re-imburse these car expenses at the full repayment rate.

118.    As a single example of this failure to repay on 5/14/24 Plaintiff McGreal drove about 45 miles over the course of about 2-2.5 hours and she was reimbursed $9.77 for mileage.

119.    This equals approximate 0.22 cents per mile which is far below the IRS standard mileage repayment rate of 0.67 per mile.

120.    Said failure to repay mileage costs is a violation of the IWPCA.

121.    The failure to re-pay mileage costs also reduces the Plaintiffs' and classes overtime compensation, thus is also a violation of the FLSA And/or IMWL.

**FORCED CHANGES TO RATES OF PAY VIOLATES THE IWPCA**

122.    Defendants also have a policy and procedure of reducing employees agreed-to rate of pay to minimum wage, without agreement of the employees.

123.    Defendants' policy is to reduce employees from their agreed-to rates of $17.00-$20.00 per hour to the state minimum wage rates.

124.    Defendants policy of forced reduction is further enforced by Defendants threats to withhold wages, unless the employee signs an "agreement" to the change in rates.

125.    These post work wage rate changes violate the IWPCA provisions 820 ILCS 115/10

126.    The IWPCA requires:

127. `Employers  shall  also  notify  employees  of  any  changes  in  the`
     `arrangements,  specified  above,  prior  to  the  time  of  change.` 820
     ILCS 115/10

128. In this case, Defendants change the rates of pay after the work is done, thus violating these provisions.

**DEFENDANTS FAIL TO INCLUDE BONUS IN OVERTIME RATE**

129. Defendants offer non-discretionary bonuses but fail to include those bonuses in the employees overtime rates.

130. The Defendant offers non-discretionary bonuses known as the "123 bonus" which is earned if an employee has no sick calls or other absences in a two week period.

131. This non-discretionary bonus is for $100 or $120 for a two week period.

132. Despite being a non-discretionary bonus which should be included in Plaintiff and classes overtime rate of pay, Defendants fail to include those non-discretionary bonus in the overtime rate in violation of FLSA/IMWL regulations.

133. The FLSA defines "regular rate of pay" to include "all remuneration for employment paid to, or on behalf of, the employee," excluding certain types of compensation provided in 29 U.S.C. § 207(e). Nondiscretionary bonuses count as "remuneration" that an employer must include in the regular rate of pay. *See* 29 U.S.C. § 207(e); WHD Opinion Letter FLSA2009-21, 2009 WL 649023, at *1 (Jan. 16, 2009); *see also* 29 U.S.C. § 207(e)(3) (permitting discretionary bonuses to be excluded from the regular rate). A bonus is nondiscretionary if it "is the result of collective bargaining." 29 C.F.R. § 778.211(c).

134. Thus the above regulation requires Defendant bonuses be included in the paid overtime rate, yet Defendants fail to do so in violation of the FLSA and IMWL.

## DEFENDANTS STEAL TIPS

135. Defendants steal the earned tips of the Plaintiffs and IWPCA class.

136. Defendants allow for its clients/customers (those receiving the cleaning services) to pay to the cleaners/employees additional compensation via payment of gratuities or tips.

137. The ability of customers to give cleaners tips is found on Defendants' website FAQ section question reading:

### Do your Professional House Cleaners accept tips?

138. The answer on Defendants site reads "**Our PHC's are allowed to accept tips. While tipping is not expected it is always appreciated!**"

139. Thus Defendants allow for employees/cleaning workers to receive tips.

140. According the to IWPCA tips are property of the workers and may NEVER be taken by the employers.

141. This provision is found in `820 ILCS 115/4.1 Gratuities.`

142. This section of the IWPCA reads:

```
(a) Gratuities to employees are the property of the
employees, and employers shall not keep gratuities.
Failure to pay gratuities owed to an employee more
than 13 days after the end of the pay period in which
such gratuities were earned constitutes a violation of
this Act.
```

143. However Defendants have a policy and procedure that steals these tips from the employees/Plaintiffs and IWPCA class.

144. Defendants' policy for tips reads:

- "Remove tips of a rating of "0" or anything lower than a "8"."

145. Thus if a customer tips, AND the customer rates a cleaner with a rating of 7, 6, 5, 4, 3, 2, 1 or 0, the employer steals the tip and retains it.

146. Similarly, Defendants have a policy that if a cleaner is late, the tip is reduced for the late employee, this too is not permitted as the tip is not for the Defendants to re-distribute as it is the property of the employee.

147. Additionally Defendants fail to pay earned tips to training employees, despite IWPCA provisions prohibiting this tip theft.

**DEFENDANTS FAIL TO PAY OVERTIME AT OVERTIME RATE**

148. Defendants have a policy and procedure of not paying overtime at an overtime rate.

149. Defendant policy and procedure is any hours over 80 in a two weeks are shifted to other pay categories to avoid the appearance of overtime hours.

150. Defendants policy is as follows:

-"Any over 80 goes into salary pay or 123 bonus"

151. Thus Defendants attempt to hide its illegal failure to pay overtime via shifting overtime work hours to "salary" or a "bonus" despite the fact that the pay should be paid as wages, and/or paid at overtime rate of pay.

152. Defendants shifting of overtime pay to hidden categories is above and beyond the violations for failure to pay overtime for travel time.

<u>DEFENDANTS DEDUCT WAGES FROM EMPLOYEES FOR "RE-CLEANS"</u>

153. Defendants also violate the IWPCA (and potentially the FLSA and IMWL) for "recleans".

154. Defendants offer as a guarantee for its customers that if the customer is not satisfied, that the Defendants will clean a location as second time, or will "re-clean" to help ensure a customers satisfaction. While Defendants are free to offer this service, the IWPCA/FLSA/IMWL violation is that Defendants have a policy and procedure of deduction from the employees wages that cleaned the locations the first time.

155. The specific policy and procedure reads "Recleans deduct amount from previous cleaning $20 per hour".

156. This means that the "previous cleaners" have deductions from their wages at $20.00 per hour.

157. The employees do not consent to this deduction, thus the deduction is in volation of the IWPCA which requires contemporaneous written agreement to any deduction without the deduction being compelled.

158. The Defendants' thefts of work hours from Plaintiffs and class is also memorialized in Defendants "Contract" which states: "In the event a customer requests a reclean, the original team should be sent to complete the cleaning. Should another team be sent and must completely re-clean the customer's home, that team would then receive full commission for the clean, and the original team would not receive any." However, when the original team is sent to complete the cleaning, they are not paid to do so. If another team is sent, 20/hour is deducted

from the original team's paycheck for the time the new team spends cleaning, regardless of how much they are cleaning.

159. Thus by this alleged contract, the Defendants have admitted to the theft of work hours for Plaintiffs and class.

**DEFENDANTS VIOLATE THE ILLINOIS LEAVE ACT**

160. Plaintiffs' also bring claims pursuant to the Paid Leave Act based on the Defendants' policy of not allowing, properly paying or failing to payout earned vacation time, in violation of the Paid Leave Act provisions requiring payment of earned wages via vacation time.

161. The Paid Leave Act requires Illinois employers to provide employees with a minimum of 40 hours of paid leave during each 12-month period. The law applies to every employee working for an employer in Illinois, including domestic workers.

162. Employees are entitled to begin using the accrued paid leave after 90 days. This means the first day employees could take off time that has accrued since January 1, 2024 would be March 31, 2024.

163. Despite requiring paid leave, Defendants simply do not follow this law either.

164. This is shown by Plaintiffs McGreal and Robinson both who worked from January of April of 2024, and Plaintiffs left the employment shortly after April of 2024, yet Defendants paid nothing to Plaintiffs for their earned vacation time.

165. Plaintiff Robinson worked for over a year, and was promised vacation time, and Plaintiff was not paid the promised vacation time at the end of his employment.

166. Paid leave accrues at the rate of one hour of paid leave for every 40 hours worked up to a minimum of 40 hours of paid leave or such greater amount if the employer provides more than 40 hours.

167. Plaintiff Robinson worked at least 562 hours (not including travel time and other unpaid hours), thus should have earned and been paid for approximately 14 hours of paid leave.

168. Plaintiff McGreal likewise worked approximate 747 hours from January 1, 2024 to May 31, 2024, yet Plaintiff McGreal's 5/31/24 check shows no accrued leave time, and when her employment with Defendants ended Plaintiff received no payment of earned leave in violation of the Leave Act.

169. Defendants also fail to post Leave Act notices at the Defendants work place.

<u>DEFENDANTS ALSO SHAVE WORK TIME FROM WORK/TIME RECORDS</u>

170. Defendants also shave work time from employees work hours and time records.

171. A specific example of this is shown in another employee, Michelle Rabenda arrived at work early to do laundry most mornings. The other manager, Tanisha (last name not known), ordered Plaintiff McGreal to shave 30 minutes off of Michelle's check each day when doing payroll. Tanisha showed Plaintiff Ms. Rabenda's time card which showed that she had clocked in for about 2 hours each morning and Tanisha crossed off each entry and wrote in 1.5 hours.

PLAINTIFFS ALSO SEEK VOIDING OF DEFENDANTS NON-COMPETE CONTRACT

172. As part of the Defendants hiring process all employees of Defendants are forced to sign various documents including a document named "Confidentiality/Non-disclosure and Non-solicitation Agreement". (Hereinafter "Non-Compete" or "Non-Compete Agreement")

173. This Non-Compete document imposes restrictions on the Plaintiffs and classes abilities to secure employment after they stop working for Defendants. In sub-section 2.0 it does not allow, per the agreement, any employee to work for any other similar work for a radius of 75 miles for two years.

174. Such a non-compete, for relatively low wage workers, is not enforceable and a violation of Illinois law voiding non-competes for anyone earning less than $45,000 (the Jimmy John's law).

175. As a remedy of this litigation, Plaintiffs ask for the court to declare the agreement as to its Non-Compete terms to be void and unenforceable and for the class to be notified of that finding.

### FIRST CLAIM FOR RELIEF
**Individual and Class Action Against Defendants**
**Under the Illinois Minimum Wage Law "IMWL"**

176. Plaintiffs reallege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

177. Plaintiffs were employees of the Defendants pursuant to the IMWL.

178. Plaintiffs were employed by DEFENDANTS as employees.

179. It is a policy, procedure and job requirement of DEFENDANTS to pay its employees less than minimum wage and/or not pay overtime rate of pay for overtime hours of work.

180. The Defendants unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting most if not all of the Defendants' employees.

181. As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial.

182. Illinois law contains a three-year statute of limitations regardless of whether the violation was willful. 820 ILCS 105/12(a).

183. Defendants employed more than four employees during the relevant periods of time.

### SECOND CLAIM FOR RELIEF

### (FLSA Claims, 29 U.S.C. § 201 et seq.)

184. Plaintiffs reallege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

185. At all relevant times, DEFENDANTS has been, and continues to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants has employed, and continues to employ, "employee[s]," including the Plaintiff, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants has had gross operating revenues in excess of Five Hundred Thousand and no/100 Dollars ($500,000.00).

186. At all relevant times, Defendants has engaged, and continue to engage, in a willful policy, pattern, or practice of requiring their employees, including the Plaintiffs to work in excess of forty (40) hours per week without compensating such employees to pay its employees at a proper overtime rate of pay.

187. At all relevant times, the work performed by employees including the Plaintiffs employed at Defendant were, and continue to be, required or permitted by Defendants, for the benefit of Defendants, directly related to such employees' principal employment with Defendants, and as an integral and indispensable part of such employees' employment of Defendants.

188. As a result of the Defendant willful failure to record or compensate its employees– employed by Defendant for all hours worked, Defendant has violated, and continues to violate, the maximum hours provision of the FLSA, 29 U.S.C. § 207(a)(1), and § 215(a).

189. As a result of the Defendant's willful failure to record, report, credit, and/or compensate its employees employed by Defendant, including the Plaintiffs, Defendant has failed to make, keep and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, including 29 U.S.C. §§211(c) and §§ 215(a).

190. The foregoing conduct, as alleged, violated the FLSA, 29 U.S.C. §§ 201 et seq.

191. Plaintiffs seek damages in the amount of their respective unpaid compensation, plus liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

192.    Plaintiffs seek recovery of attorneys' fees and costs of action to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

193.    At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the FLSA.

194.    At all times relevant to this action, Plaintiffs were engaged in commerce and/or the production of goods for commerce and/or Defendants are/were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

195.    Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants their unpaid compensation, an additional equal amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, reasonable attorneys' fees, and costs of the action, pursuant to 29 U.S.C. § 216(b)§ 6 of the Fair Labor Standards Act, 29 U.S.C.A. § 206, 9 FCA title 29, § 206, provides that every employer shall pay to each of his employees who is engaged in interstate or foreign commerce or in the production of goods for such commerce, wages at specified hourly rates.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the IWML Class, IWPCA Class, and the FLSA Collective, pray for the following relief:

A.    Unpaid wages and liquidated damages pursuant to 29 U.S.C. § 201 et seq. and the supporting an Illinois Department of Labor and United States Department of Labor regulations;

B        Unpaid regular wages, and overtime wages pursuant to the IMWL, IWPCA and other state wage laws;

C.        Compensation originating from DEFENDANTS company policies, contractual obligations and ERISA requirements owed as a result of unpaid overtime wages;

D.        An injunction requiring Defendants to pay all statutorily-required wages pursuant to Illinois Law;

E.        Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful under Illinois Law, 820 ILCS 105/1 *et seq.* and supporting Illinois Department of Labor regulations and other state wage laws;

F.        Attorneys' fees and costs of this action in accordance with FLSA and Illinois Wage Laws; and

G.        Consequential damages;

 H. and costs of this action; and

I.        Such other relief as this Court shall deem just and proper.

### THIRD CLAIM FOR RELIEF

### INDIVIDUAL AND CLASS ACTION PURSUANT TO IWPCA

196.    Plaintiffs repeat and re-allege all paragraphs of this complaint.

197.    Plaintiffs brings IWPCA claims for the following

a.    Employees having deductions taken from work hours via shaving policy.

b.    Defendant failing to maintain records of bonus time and deductions from same.

c.    Failure to pay wages at "agreed-to" rates of pay.

    d. Deductions taken without Consent as required by IDOL regulations.

    e. Failure to pay wages within 13 days of the end of the pay period.

    f. Theft of employee tips by Defendants.

198. The Defendants unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting all Defendants' employees.

199. Upon information and belief, all class employees of the Defendant had the same policies imposed upon its employees.

200. Plaintiffs are or were under the control and direction of the owner of the Defendant and/or his agents during the period of the Plaintiff employment under their contracts of service and in fact.

201. Plaintiffs were not independent contractors, rather were employees of the Defendant by oral agreement and/or written contract.

202. Plaintiffs' employment were in the usual course of business for which such service is performed.

203. Plaintiffs do not possess a proprietary interest in the Defendant.

204. The Defendant is an "employer" under the terms of the IWPCA section

205. In accordance with IWPCA, an employer is also defined as: "any officer of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation".

206. Individual Defendants are named as an employers, as they knowingly permitted violations of the IWPCA.

## **PRAYER FOR RELIEF**

WHEREFORE, premises considered, Plaintiffs respectfully prays that each

Defendant be summoned to appear and answer herein; for orders as follows:

(A)    For an order of this Honorable Court entering judgment in Plaintiffs' favor against Defendant;

(B)    That the Court award Plaintiffs actual economic damages in an amount to be determined at trial,

(C)    A declaratory judgment that Defendant's practices alleged herein violate the Fair Labor Standards Act, 29 U.S.C. §201, et sea., and attendant regulations at 29 C.F.R. §516 et sea..;

(D)    A declaratory judgment that Defendant's practices alleged herein violate the Illinois Minimum Act,

(E)    Judgment for damages for all unpaid regular wages and overtime compensation under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.,* and attendant regulations at 29 C.F.R. §516 et sea.:

(F)    Judgment for damages for all unpaid regular wages and overtime compensation under the Illinois Minimum Wage Law, and attendant regulations;

(G) Judgment for liquidated damages pursuant to the Fair Labor Standards Act, 29 US.C. §201, *et seq* in an amount equal to all unpaid regular wages and overtime compensation owed to Plaintiffs during the applicable statutory period;

(H) Judgment for liquidated damages pursuant to the Illinois Minimum Wage Law,. and attendant regulations;

(I) Judgment for any and all civil penalties to which Plaintiffs may be entitled;

(J) An order directing Defendant to pay prejudgment interest, reasonable attorney's fees and all costs connected with this action; and

(K) Order payment of punitive damages sufficient to deter Defendant's future retaliations.

(L) Such other and further relief as this Court may deem necessary, just and proper.

**COUNT IV**

**VIOLATIONS OF THE ILLINOIS PAID LEAVE ACT**

207. Plaintiffs repeat and re-allege all paragraphs of this complaint.

208. Plaintiffs' also bring claims pursuant to the Paid Leave Act based on the Defendants' policy of not allowing, properly paying or failing to payout earned vacation time, in violation of the Paid Leave Act provisions requiring payment of earned wages via vacation time.

209. The Paid Leave Act requires Illinois employers to provide employees with a minimum of 40 hours of paid leave during each 12-month period. The law applies to every employee working for an employer in Illinois, including domestic workers.

210. Employees are entitled to begin using the accrued paid leave after 90 days. This means the first day employees could take off time that has accrued since January 1, 2024 would be March 31, 2024.

211. Despite requiring paid leave, Defendants simply do not follow this law either.

212. This is shown by Plaintiffs McGreal and Robinson both who worked from January of April of 2024, and Plaintiffs left the employment shortly after April of 2024, yet Defendants paid nothing to Plaintiffs for their earned vacation time.

213. Paid leave accrues at the rate of one hour of paid leave for every 40 hours worked up to a minimum of 40 hours of paid leave or such greater amount if the employer provides more than 40 hours.

214.    Plaintiff Robinson worked at least 562 hours (not including travel time and other unpaid hours), thus should have earned and been paid for approximately 14 hours of paid leave.

215.    Defendants also fail to post Leave Act notices at the Defendants work place.


**PRAYER FOR RELIEF**

WHEREFORE,   premises   considered,   Plaintiffs respectfully prays that each Defendant be summoned to appear and answer herein; for orders as follows:

(D)    For an order of this Honorable Court entering judgment in Plaintiffs' favor against Defendants;

(E)    That the Court award Plaintiffs actual economic damages in an amount to be determined at trial,

(F)    A declaratory judgment that Defendant's practices alleged herein violate the Illinois Paid Leave Act.;

(G)    Payment of Fees and Costs

(H)    Payment of owed/earned leave

(I)    An Order of the Court requiring Defendant to post Leave Act Posters

(J)    Other relief that is just and right


**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: July 4, 2024                  Respectfully submitted,


By:           -S-John C. Ireland

John C. Ireland

Attorney for the Plaintiffs and Class

The Law Office Of John C. Ireland
636 Spruce Street
South Elgin ILL  60177
 630-464-9675          Facsimile 630-206-0889                    attorneyireland@gmail.com